B27 (Official Form27) (12/09)

# United States Bankruptcy Court
## Eastern District of New York

In re Louis DeMarco ,
Debtor

Case No. 11-49923
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: **TD Bank, N.A**

2. Amount of the debt subject to this reaffirmation agreement:
$ 19,295.30 at the date of bankruptcy $18,424.61 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: 7.84% prior to bankruptcy
7.84%. under reaffirmation agreement (☒ Fixed Rate ☐ Adjustable Rate)

4. Repayment terms (if fixed rate): per month for 36 months

5. Collateral, if any, securing the debt: Current market value: $ 16,950.00
Description: 2008 Ford Mustang

6. Does the creditor assert that the debt is nondischargeable? ☐ Yes ☒ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

| Debtor's Schedule I and J Entries | | Debtor's Income and Expenses as Stated on Reaffirmation Agreement | |
|---|---|---|---|
| 7A. Total monthly income from Schedule I, line 16 | $ 5862.35 | 7B. Monthly income from all sources after payroll deductions | $ 5862.35 |
| 8A. Total monthly expenses from Schedule J, line 18 | $ 8030.00 | 8B. Monthly expenses | $ 8,030.00 |
| 9A. Total monthly payments on reaffirmed debts not listed on Schedule J | $ ∅ | 9B. Total monthly payments on reaffirmed debts not included in monthly expenses | $ 0 |
| | | 10B. Net monthly income (Subtract sum of lines 8B and 9B from line 7B. If total is less than zero, put the number in brackets.) | $ (-2167.65) |

11. Explain with specificity any difference between the income amounts (7A and 7B):

N/A

12. Explain with specificity any difference between the expense amounts (8A and 8B):

N/A

If line 11 or12 is completed, the undersigned debtor, and joint debtor if applicable, certifies That any explanation contained on those lines is true and correct.

N/A

Signature of Debtor (only required if line 11 or 12 is completed)

Signature of Joint Debtor (if applicable, and only required if line 11 or 12 is completed)

Other Information

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt: I am working on lowering All other expenses

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
✓ Yes ______ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
✓ Yes ______ No

**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

Carol A Demers

Signature

Carol A Demers Creditor

Print/Type Name & Signer's Relation to Case

B240A (Form B240A) (04/10)

Check one.
☑ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
~~See Debtor's Statement in Support of~~ *Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
**Eastern District of New York**

In re Louis DeMarco, Debtor

Case No. 11-49923
Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** TD Bank N.A.

☐ Check this box if Creditor is a Credit Union

## I. REAFFIRMATION AGREEMENT

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: 2008 Ford Mustang
*For example, auto loan*

B. *AMOUNT REAFFIRMED*: $18,424.61

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before 2008 Ford Mustang, which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V.C below.*

C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is 7.84%..

*See definition of "Annual Percentage Rate" in Part V Section C below.*

This is a (check one) ☒ Fixed rate ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms:

☒ $554.36 per month for 36 months starting on 01/02/2012.

☐ Describe repayment terms, including whether future payment amount(s) may be different from The initial payment amount.

E. Describe the collateral, if any, securing the debt:

| | |
|---|---|
| Description: | 2008 Ford Mustang |
| Current Market Value | $16,950.00 |

F. Did the debt that is being reaffirming arise from the purchase of the collateral described above?

☒ Yes. If yes, what was the purchase price for the collateral? $31,659.68
☐ No. If no, what was the amount of the original loan? $________

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

| | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due (including fees and costs) | $19,295.30 | $18,424.61 |
| Annual Percentage Rate | 7.84% | 7.84% |
| Monthly Payment | $554.36 | $554.36 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☑ Yes ☐ No

B. Is the creditor a credit union?

Check one. ☐ Yes ☑ No

C. If your answer to EITHER question 1. or 2. above is "No" complete a. and b. below.

1. Your present monthly income and expenses are:

a. Monthly income from all sources after payroll deductions (take-home pay plus any other income) $ 5,862.35

b. Monthly expenses (including all reaffirmed debts except this one) $ 7475.64

c. Amount available to pay this reaffirmed debt (subtract ii. from i.) $ Ø

d. Amount of monthly payment required for this reaffirmed debt $ 554.36

*If the monthly payment on this reaffirmed debt (line d.) is greater than the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

Check one of the two statements below, if applicable:

☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts your are reaffirming, including this one.



You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because: I am working on lowering All other expenses.

Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions 1. and 2. above were "Yes," check the following statement, if applicable:

☒ You believe this reaffirmation agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

**PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES**

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this reaffirmation agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sigh,):

Date 2/14/12 Signature [signature]
Debtor

Date ____________ Signature ________________________
Joint Debtor, if any

If a joint reaffirmation agreement, both debtors must sign.

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor TD Bank N.A. Attn Bankruptcy — PO Box 9547, Portland, ME 04112
Print Name — Address

Robin Paradis Bankruptcy Manager — [signature] — 2/22/12
Print Name of Representative — Signature — Date

**PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)**

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the Debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☑ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 1/31/12 Signature of Debtor's Attorney [signature]
Print Name of Debtor's Attorney Kevin B Zazzera

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

---

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A. DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when ~~it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the~~ Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement,** the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

## B. INSTRUCTIONS

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT

**Eastern District of New York**

In re Louis DeMarco , Case No. 11-49923
Debtor

Chapter 7

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because (provide any additional relevant reasons the court should consider):

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions (*check all applicable boxes)*:

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

☒ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

Signed: ______________________
(Debtor)

______________________
(Joint Debtor, if any)

Date: ______________



**Banknorth**

10/24/2008

Louis DeMarco
97 White Hall St
Staten Island, NY 10306

RE: Auto Loan Account #[redacted]284

Dear Louis DeMarco:

As a result of our standard contract review upon purchase from dealers, we discovered an error in the determination of the **APR** on your Retail Installment Sale Contract with Windsor Nissan. As a result we have changed your **APR** from 7.99% to 7.84%. Your **Payment Amount** has changed from $556.79 to $554.36 beginning on 12/2/2008. The **Financed Amount** enclosed in your contract has *not* changed.

Enclosed is a corrected Truth in Lending Disclosure and Itemization of the Amount Financed form. Please retain for your records. You will receive a coupon book with the corrected monthly payment amount.

We apologize for any inconvenience this error may cause.

If you have questions, please contact our Loan Operations Customer Service Dept. at 1-800-295-7400. We appreciate having you as a customer, and we look forward to serving you in the future.

Sincerely,

Kevin Upham
Consumer Loan Processor
TD Bank, N.A.

cc: TD Bank, N.A. Loan Operations
Windsor Nissan Dealership



Bank

America's Most Convenient Bank®

TD Bank, N.A.
P. O. Box 9547
Portland, ME 04112-9547
T: 800-742-2651
www.tdbank.com

January 11, 2010

Louis Demarco
97 Whitehall Street
Staten Island, NY 10306

RE: Loan [redacted]84

Dear Louis Demarco:

Please find the terms of your extension request listed below. To request an extension, your signature is needed where indicated.

Return the original letter using the self-addressed stamped envelope that is enclosed for your mailing convenience or you may fax this extension to my attention at 207-317-4813. Retain the copy for your records. In order to process this request for an extension, **WE MUST HAVE THE ORIGINAL COPY OR FAXED COPY WITHIN SEVEN (7) BUSINESS DAYS.**

You will be notified of the acceptance or denial of your request within (7) business days of receipt of your properly endorsed agreement request.

Thank you for your prompt attention to this matter. If you have questions, please contact me immediately at 1-800-742-2651, Ext 4339 to avoid any delays

Respectfully,

Nicole Hayes
Retail Collections

Xm - I

## EXTENSION REQUEST

**By signing below, Borrower(s) agrees that TD Bank, N.A. may extend the January 2010 payment. I/we understand and agree that my/our next payment will be due February 02, 2010. I/we understand and agree that if TD Bank, N.A. accepts my/our Extension Request that my/our new maturity date will be December 02, 2014. Further, by signing below I/we acknowledge and agree that an extension of the term of my/our loan does not discharge or replace the original debt.**

2/17/10

Louis Demarco DATE

1/20/10

Member FDIC

VINtek THE NATION'S LIEN MACHINE.™

# Lien and Title Information Title Report
## 2486-TD Banknorth, NA

| | | | |
|---|---|---|---|
| **Account Number** | [redacted]8284 | **VIN** | 1ZVHT85H285111622 |
| **Customer** | LOUIS DEMARCO | | |
| **Organization ID** | 2486 | **Organization Name** | TD Banknorth, NA |
| **Lien Start** | 10/18/2008 | **Lien End** | 11/02/2014 |
| **Original Loan Amount** | $0.00 | **Lien Balance Amount** | $0.00 |
| **Lien Type** | Retail | **Dealer ID** | 22022200010001 |
| **Desc1** | 2008 FORD MUSTANG-V8 | **Entry Date** | 10/28/2008 |

### LAST ELT Transactions

| | | |
|---|---|---|
| **Sent** | Received On | **Add Record - Lien Filing Accepted** |
| **Received** | 11/10/08 9:22 PM | |

### Borrower / Lessee Details

| | |
|---|---|
| **Name** | LOUIS DEMARCO |
| **Address** | 97 Whitehall St<br>Staten Island, NY 10306-0000 |

### Vehicle Information

| | | | |
|---|---|---|---|
| **Vehicle Type** | | **Make** | FORD |
| **Model** | MUSTANG | **Year** | 2008 |
| **Mileage** | 0 | | |

### Title Information

| | | | |
|---|---|---|---|
| **Title Number** | VTK069716685 | **Title State** | NY |
| **Tag Number** | | **VIN** | 1ZVHT85H285111622 |
| **Status** | MATCHED 11/10/2008 | **Match Date** | 11/10/2008 |
| **Lien Expiration Date** | | **Media Type** | Electronic |

### State Information

| | | | |
|---|---|---|---|
| **Name** | DEMARCO,LOUIS | | |
| **Address** | 97 Whitehall St<br>Staten Island, NY 10306 | | |
| **Vehicle Type** | | **Make** | FORD |
| **Model** | | **Year** | 2008 |
| **Mileage** | 0 | | |
| **Title State** | NY | **Title Number** | VTK069716685 |
| **Brands** | | | |

**RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT**

No.

Date 10/18/2008

Seller: WINDSOR NISSAN, 590 RT. 130, HIGHSTOWN NJ 08520

"We" and "us" mean the Seller above, its successors and assigns.

Buyer: LOUIS DEMARCO, 97 WHITE HALL STREET, STATEN ISLAND NY 10306

"You" and "your" mean each Buyer above, and guarantor, jointly and individually.

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

Description of Motor Vehicle Purchased: Year 2008, Make FORD, Model MUSTANG; VIN 1ZVHT85H285111622; Lic. No./Year; ☐ New ☒ Used; Other: 4/3/17 OCT 23 2008

Description of Trade-In: 2000 HYUNDAI SONATA KMHWF35V0YA298727

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 31659.68, plus the time price differential accruing on the unpaid balance at the rate of 7.99 % per year from today's date until maturity. The time price differential accrues on a 365/366 day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at 7.99 % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **PREPAYMENT PENALTY:** You agree to pay a penalty of $ N/A if you pay this Contract in full within 12 months after the first scheduled payment.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☐ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

**TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 1200.00 |
|---|---|---|---|---|
| 7.99 % | $ 8429.20 | $ 31659.68 | $ 40088.88 | $ 41288.88 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | 556.79 | MONTHLY BEGINNING: 12/02/2008 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.

**Late Charge:** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of $10.

**Prepayment:** If you pay off this Contract early, you ☐ may ☒ will not have to pay a penalty.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit accident and health (disability), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured ____
☐ Single ☐ Joint Prem. $ N/A Term N/A

Credit Disability: Insured ____
☐ Single ☐ Joint Prem. $ N/A Term N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer ____ d/o/b Buyer ____ d/o/b

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ N/A. If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Coverage $ N/A
☐ $ N/A Deductible, Comprehensive Cov. $ N/A
☐ Fire-Theft and Combined Additional Coverage $ N/A
☐ N/A $ N/A

☒ **THIS DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

☒ **SERVICE CONTRACT:** With your purchase of the Vehicle, you agree to purchase a Service Contract to cover N/A ____. This Service Contract will be in effect for ____.

**ITEMIZATION OF AMOUNT FINANCED**

| Item | Amount |
|---|---|
| Vehicle Price | $ 26978.00 |
| Amount to Finance line 4. (if 4. is negative) | $ N/A |
| 1. Cash Price of Vehicle | $ 26978.00 |
| Manufacturer's Rebate | $ N/A |
| Cash Down Payment | $ 1000.00 |
| Deferred Down Payment | $ N/A |
| 2. Total Cash/Rebate Down | $ 1000.00 |
| Trade-In Allowance (Description: 2000 HYUNDAI SONATA) | $ 200.00 |
| Less: Amount owing (Paid to: ____) | $ N/A |
| 3. Net Trade-In | $ 200.00 |
| 4. Net Cash/Trade-In (2. plus 3.) | $ 1200.00 |
| 5. Down Payment (4.; disclose as $0 if negative) | $ 1200.00 |
| 6. Adjusted Cash Price (line 1 minus line 5) | $ 25778.00 |
| 7. Sales Tax (reduced as required due to value of like trade-in) | $ 2497.68 |
| 8. Unpaid Cash Balance (line 6 plus line 7) | $ 28275.68 |
| Service Contract, Paid to: ____* | $ 2295.00 |
| Paid To Others: | |
| Paid to Public Officials - Filing Fees | $ N/A |
| Paid to Public Officials - Supplemental Title Fee | $ N/A |
| Paid to Public Officials - Other than Filing Fees | $ 200.00 |
| Insurance Premiums* | $ N/A |
| To: GAP | $ 750.00 |
| To: DOC FEE | $ 139.00 |
| To: N/A | $ N/A |
| 9. Total Other Charges | $ 3384.00 |
| *We may retain or receive a portion of this amount. | |
| 10. Principal Balance (line 8 plus line 9) | $ 31659.68 |
| 11. Time Price Differential | $ 8429.20 |
| 12. Time Balance (line 10 plus line 11) | $ 40088.88 |
| 13. Less: Prepaid Finance Charges | $ N/A |
| 14. Amount Financed (line 10 minus line 13) | $ 31659.68 |
| Time Sales Price (line 5 plus line 12) (required pursuant to N.J. Rev. Stat. 17:16C-27(i)) | $ 41288.88 |

**ASSIGNMENT:** This Contract and Security Agreement is assigned to TD Bank, N.A. ____, the Assignee. The name, address and telephone number of the person authorized to receive future payments is ____

~~TD BANK NA~~
~~70 GRAY ROAD WEST FALMOUTH ME 04105~~
~~(800)809-2277~~

This assignment is made ☐ under the terms of a separate agreement. ☒ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ ~~This assignment is made with recourse.~~

Seller: By ____ Date 10/18/2008

**NOTICE TO RETAIL BUYER**

**Do not sign this contract in blank.**
**You are entitled to a copy of the contract at the time you sign.**
**Keep it to protect your legal rights.**

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.**

Buyer: LOUIS DEMARCO 10/18/2008
Signature ____ Date

Signature ____ Date

Seller: By ____



© 1995, 1998 Wolters Kluwer Financial Services – Bankers Systems™ Form RSS-MVLF-NJ 8/30/2008 Customized

MOTOR VEHICLE – NOT FOR MANUFACTURED HOMES

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that we (or our affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that you buy through us or our affiliate.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums will first be applied to the next maturing installment of this Contract, except to the extent applied toward payment for similar insurance protecting the interest of the Buyer and the Seller or holder of this Contract. In the case of credit life or credit accident and health insurance, the refund to you shall be made in accordance with N.J. Rev. Stat. § 17:38A-1, et seq.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:

A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract.
E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent.
F. You will pay all taxes and assessments on the Property as they become due.
G. You will notify us of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if you fail to perform any obligation that you have undertaken in this Contract (which includes doing something you have agreed not to do).

If you default, you agree to pay attorneys' fees of 20% of the first $500.00 and 10% on any excess of the amount due and payable under this Contract, if referred for collection to an attorney not a salaried employee of ours.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:

A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the contract rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
D. We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward your obligations.
E. We may, as allowed by law, sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**RETURN CHECK CHARGE:** You agree to pay a $20.00 fee for any check returned to us uncollected due to insufficient funds in your account.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. (Generally, a loss payee is the person to be paid in case of loss or damage to the Property.) In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the contract rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

A. You must pay this Contract even if someone else has also signed it.
B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
C. We may release any security and you will still be obligated to pay this Contract.
D. If we give up any of our rights, it will not affect your duty to pay this Contract.
E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER:** You agree to give up your rights to require us to do certain things to the extent permitted by law. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.

### THIRD PARTY AGREEMENT

By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

You acknowledge receipt of a completed copy of this Contract.

Signature ____________________ Date ________

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

### ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)

Seller warrants:

A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.

UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.

WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

© 1995, 1996 Wolters Kluwer Financial Services – Bankers Systems™ Form RSS-MVLF-NJ 8/30/2006